The next case on this morning's docket is the case of Rogers v. Imeri, John Imeri, etc. We have Mr. Hugh Griffin for the appellant and Mr. Chris Vester for the appellate. You may proceed, Mr. Griffin. May it please the court, Hugh Griffin. I am one of the attorneys that's been appointed by the Illinois Insurance Charity Fund to represent the defendant, John Imeri, in this Gramshop case. After his Gramshop Liability Insurance Constitutional Casualty Company was declared insolvent in January of 2011. The case is here before you now because the circuit court granted the parties agreed motion for a Rule 308 certification presenting the following issue. The case hasn't been tried yet, but the parties decided before it is, both wanted to determine if there was going to be a maximum recovery in the case. What was it? And so if I can just state the question with a little bit more facts in it than the actual certified issue. The question is, if the jury's verdict exceeds the maximum liability against the defendant, exceeds the maximum liability that the Gramshop Act would allow in this case, and all agree that is $130,338.51, does the reduction required by Section 546A of the Act for the $106,550 that plaintiffs have already recovered from other solid insurers reduce the maximum liability of the defendants under the Act? Assuming now the verdict is in excess of that amount, that's the premise of the question. Does that reduction come off that maximum obligation or that maximum liability of the defendant and the fund? Or does it come off the higher amount of the jury's verdict, which would not be the obligation or the liability of the defendant or the fund? We submit that the question is clearly answered by the express language of Section 546A itself. That's the statute. Let me just ask a question. The trial court hasn't actually ruled on this issue. She really didn't. Her ruling was, you're premature. I can't enter a judgment now for $23,788. We weren't asking for that. We didn't want her to enter a judgment. So we went back on a motion to reconsider or to certify. At that point, we engaged in conversation with Mr. Custer, and we both agreed, you know, let's find out. Well, I mean, you're in a situation with a death case, and so you're anticipating the likelihood is if there's liability, there's going to be a substantial verdict. That's a fair assumption. I mean, we could get a conservative jury. I mean, you know, he's making the argument they were trying to prime him on trial by jury. I mean, this doesn't do that. No matter what you rule here today, the site can still go to trial. Well, the reason I ask the question is, I mean, it's unusual for us to get a 308 appeal where the trial court has not entered an order. And 308 says when the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law, blah, blah, blah. And so I guess there's a question, are we premature? Well, she didn't deny our motion for summary judgment. She denied it. Our motion was brought under 1005D, which sometimes I forget that it's there. I mean, what it says is you can seek a summary adjudication on a major issue, even if it's not dispositive of the case. Okay. And you did seek that. You did seek that. She denied it. She denied it. But you're right, she didn't get to really say I'm denying it because you're wrong. I think you're wrong because you want me to enter a judgment. I can't do that. And so we were going to go back to her on reconsideration, and then we agreed with Mr. Custer, maybe it's better to try to get this resolved. And we did grant leave to appeal, so. But we think it's resolved right from the clear language of Section 546, which says, a claimant shall be required first to exhaust all the coverage provided by any other insurance, and there's no dispute now in this case that all the other insurance that's been recovered falls within that ambit of that because it rises out of the same facts, injury or loss. Then the fund's obligation shall be reduced by the amount recovered under such insurance policies, and to the extent the fund's obligation is reduced by application of this section, the liability of the person insured by the insolvent insurer's policy, i.e., Ghani Ameri, this liability shall be reduced in the same amount. So, respectfully, the only reduction that meets that statutory directive is one that applies it to the statutory maximum because that statutory maximum is the obligation and the liability, assuming now we have a verdict in excess of that. The judge, he filed an excerpt from a Gramshop handbook, and it made the point that, hey, once the verdict's in, the defendant has to get up and ask that judgment be entered, and if it's over that maximum amount, make sure you get up and say, hey, judge, please enter judgment in the maximum amount, not in the amount of the jury verdict. So that would clearly be Ameri's obligation. It would clearly be Ameri's liability. And so we respectfully submit that the answer to the question is right there in plain black and white in the statutory language. You can't ignore, he filed some cases about statutory interpretation, and the first rule is you can't ignore the plain and express language of the statute. Reducing the hired jury award would not comply with the statute because the hired jury award is not the liability of either Ameri or the fund, and it's not their obligation. Well, Mr. Griffin, I mean, there's no question that the point you're urging results in a claimant who is asserting a claim that happens to be defended by the insurance guarantee fund would be treated differently than someone who's, you know, taking a claim against somebody whose insurance company is solvent. So, I mean, it would be a clear differentiation in treatment. So how do you reconcile that with, you know, the goal of the insurance guarantee fund being that people be treated the same as if the insurance company was not in solvent? Right. I mean, here it's a very clear dichotomy. One person gets deducted off the jury verdict. You're urging that here he gets deducted off. Certainly, you will find statements that the purpose of the fund is to put people in the same position they were in if there hadn't been insurance, and that's certainly an aspirational goal. It was stated way back when, I hate to say it, 35 years ago in the Lucas case, because I was in it, and it was stated in your Gines v. Ivy case. We were all around 35 years ago, too, so. I mean, you feel better. But, you know, that's certainly the aspirational goal, and it happens in many cases. It works out that way. But when you get into this area of other insurance, you know, it's clear. The case law expressly says, you know, in all events, the claim has to be governed by the limitations of the act, and that includes the other insurance provision. And that's just a fundamental provision that in some instances will end up with the claimant not being in the same boat or to have the same recovery that he would had there not been an insolvency. It's not a perfect, perfect solution. But I think the point of it is, as the cases have repeatedly said, the fund is a recovery of last resort, and the claimant must first seek to cover his loss with funds available from other insurers. And the Guaranteed Fund Act has the philosophy, excuse me, of the Guaranteed Fund Act to have all potential claims against the fund's assets reduced by a solvent insurer, not the fund, whenever possible. And so in those situations where there is other insurance and it's been recovered, the philosophy of the fund is, if you get your, in this case, $130,000 from some source, it be that other solvent insurance, which is the case here, then we will make up the difference so that in the end, you still recover that $130,000 that you would have, but part of it came from solvent insurance. Now, would that be the same result if there was no insolvency? Probably not. Probably there would be more dollars recovered by the claimant. But, again, it's not a perfect solution. It's the solution that the legislature chose, and, you know, they've expanded this statute repeatedly, this other insurance statute. The last case to really consider was Justice Ann Burke in the Roth case, and that was a perfect example of the points you're making, Justice Stewart. There was a $20,000 policy, but the only thing that covered $160,000, I think, in medicals. And she said, well, I know maybe it's different if there wasn't an insolvency here, but I've got to follow the statute. The statute's broad. The statute covers this kind of insurance, and it says you have to reduce the obligation of the fund and the defendant by the amount of that insurance. And so, in that case, the liability of the fund was zero. It was $120,000 of other insurance, $20,000 of policy of women. In our case, we still got to hold some $23,000. And, again, I think it's just a matter of what the cases have said is the legislature recognizes that the money that the fund spent, well, initially it's by assessment of all the licensed insurers in the state of Illinois. Ultimately, it comes from the insurers buying public of the state of Illinois. So, ultimately, they are the ones stuck with the bill for whatever the fund has to pay. And the legislative compromise of all that is set forth in 546. And the solution the legislature came up with is if there's other solid insurance that can be recovered and put in the pot, then we will give the fund credit. And, you know, the act is to protect insurers as well as claimants. So we will also give the insurer that same protection. Now, it doesn't always work. In this case, it gives the insurer the same protection as the fund. In my Lucas case years ago, the verdict was $390,000. The policy limit was $20,000. The recovery of other insurance was, I think, $9.9, $9,900. And so the court, the plaintiff there made kind of the same argument. Hey, that $9,900, take that off the $390,000. And the court, it wasn't the same other insurance statute. It's been modified many times, but the fundamental principle was no. That comes off the $20,000 liability of the fund. Now, in that case, the insured would still be out there for $380,000. I mean, you would only get a $10,000 credit. But in this case, because of the cap on the gram shop, the liability of the fund, the liability of the defendant is the same. And so the reduction for both is the same, leaving some $23,000 that would be owed by the fund. If there's any other questions, I can stand on the briefs. We respectfully urge the court to answer the certified question by holding that where the jury's gram shop verdict is greater than the defendant's maximum liability under the act, the reduction for other insurance recoveries under Section 546A is applied against the defendant's maximum liability under the gram shop act and not against the jury's verdict. Thank you, Mr. Griffin. You'll have the opportunity to rebut. Thank you. Thank you, Mr. Griffin. Good morning. May it please the court, counsel, Mr. and Mrs. Rogers, family. My name is Chris Custer, and I'm with Tatum Law Offices in Effingham, and I represent the estate of Roy Rogers III, who was tragically killed in a drunk driving incident when he was 18 years old. This case is not about the facts. It's about how do we reconcile the two statutes. Cutting right to the chase, how do we determine the, quote, funds obligation, under Section 546 of the Illinois Hearing T Act, because that's all it says. It talks about the funds obligation. It doesn't say how you do that, and it certainly doesn't say anything about how you reconcile it with the gram shop act. In every gram shop act case, there's a certain procedure, and it says it right in the act. Clearly, we have limits set by the controller every year, but you try the case to the jury to get the gross jury amount. In fact, if we look at the act, it says, in every such action, the jury shall determine the amount of damages, irrespective and without regard to what the actual limit is for that particular year. So you try your case to the jury. They come up with a gross jury amount, and then if there are other insurance proceeds received from other sources, for example, the tortfeasors, common law carrier, or UIN carrier, whatever it may be, the defendant files a motion for set off. In a case I tried about five years ago, a tragic case, someone was killed, lots of people on a van. We tried the case. The jury in Neffingham County awarded $4.2 million. The defendant improperly came in and asked for a set off of the common law case. They had previously paid $500,000. He reduced the $500,000 to the $4.2 million. It was far in excess of all of the applicable limits under the gram for all the people, and they paid that. There is nothing. There is nothing in the case law. There is nothing in the Guarantee Fund Act that says you throw away the procedure under gram when there is the Guarantee Fund involved. It doesn't say that. There is nothing that says that. As we're all aware, when you have two statutes, you're supposed to read them so they both make sense together and they're consistent. If we adopt what the Guarantee Fund is asking you to do, we don't have a jury trial. The jury doesn't get to decide. They just want you to basically call the comptroller's office, figure out what the appropriate limit is, deduct what common law funds that they receive from other sources, auto carrier, UIM, do the math, and that's what we pay. That's what they would like for you to do, and there is no support for that, either in 546 or the case decided by counsel. And again, I think that would effectively ignore what 21 says about a jury trial. It would basically take their right to a jury trial away. First step, try the case, get the amount. Second step, reduce the amount by the monies already received from other carriers. Third step, apply the limit. And I think we all agree that in a tragic case like this, you are going to have a jury verdict in excess, so that's not going to come into play. And we thought, no reason to put the family through the grief of a jury trial and the expense of a jury trial under the circumstances. And if you can go down further, this is a difference between do they pay $23,000 or do they pay $130,000, which certainly seems insignificant when talking about a tragedy like this. But again, there is nothing stated or cited by counsel that suggests that we totally ignore the dram shot back and take away the right to a jury trial. Now, interestingly, and I think I've said this in my brief and I don't know if anything was said in the reply brief, what happens if we have this jury trial and for whatever reason, it's not the big verdict that everyone thinks it might be. Let's say it's $100,000. Well, let's take that example, the way it's done in every single dram shot case. $100,000 gross jury verdict. Defendant files a motion for set off of the $106,000 received from UIN on auto. That's a zero number. You don't have to take the third step because you don't have to apply the minimum liability limit in this particular case of $130,000. So what do you do in that case? My hunch is that the fund would probably say, we don't have to pay anything. Under those circumstances, we don't want to take the $130,000 limit and subtract the $106,000 and come up with $23,000. We really don't want to pay $23,000 because it was a zero verdict, net verdict. He did not answer that in his reply brief. So you can't have your cake and eat it too. You can't say, well, in those cases where the jury verdict is going to be in excess of everything, we're just going to start with the limit that Comptroller tells us every year for a dram shot case and then deduct the settlements. Well, the whole premise here is, I mean, this is all premised on an excess verdict. You know, I mean, the certified question even. I mean, if you didn't, I mean, if you got a $100,000 verdict, either way, you're not going to have anything to recover, right? Well, I'm not sure. If we apply their logic and if there's an opinion from this Court that says you ignore the gross jury verdict, you ignore the way we ordinarily do it in every single dram shot case, and you start with the best for a limit and then deduct the other insurance money, you're setting yourself up for that potentially very absurd result because you are essentially ignoring or nullifying what a jury would do. And again, that would deny the plaintiff's very right to a jury trial. I mean, the dram shot back says, in every action, the jury shall determine the amount of damages without regard to the statutory limits. He wants to ignore that. He wants to go to the statutory limits, start there, deduct money received from auto carriers. Voila, you come up with the amount we owe. That really would turn the dram shot back on its head because you would basically be ignoring the right for the jury to determine the damages. So, again, I think counsel will acknowledge that 546, you look at the annotation, there's not a case that says, here's what you do in a dram shot case when you have the Guarantee Fund Act. There's not a case that says that. In some of the cases cited, like the Roth case, for example, or the Ferb case that was talked about, in those cases, the parties had already settled on the amount. There was a settlement amount, so we had a fixed figure. It didn't even talk about it. There was no jury verdict. The question of whether the jury decides gross damages was not even discussed in those cases. The Roth case, for example, the question was, the sole question was, when you do the set off, does health insurance apply? So that's what that case was about. But, again, I think to read consistently the Dram Shot Back with the Guarantee Fund Act, you're required to do it in the ordinary three-step process. So that begs the question, then, well, how is the Guarantee Fund getting the, are they getting the break? Are they getting a break here? Well, sure, you still get the break of the other insurance by filing the motion for set off, but it's got to be against the gross jury verdict. It can't be against the statute for amount. So I want to thank you for your time. If you have any questions, I'd be happy to answer them. And, again, thank you for everything. Thank you, Mr. Justice. Do we have a rebuttal, Mr. Griffin? May it please the Court once more? Justice Stewart, as you pointed out, the premise of the certified issue is a verdict in excess of the maximum limit. Obviously, if the verdict, and, again, nobody's given up any right to trial. If you go back and try the case and it comes in at $100,000, that's the obligation, and that's the liability from which now the other insurance would be reduced. I'll just refer you to the bottom of page 3 because he said I didn't respond to the argument, but I just said at the bottom of page 3, if the jury's verdict does not exceed the statutory maximum recovery permitted by the Gramshop Act, then the jury verdict constitutes the Gramshop owner's liability and the fund's obligation. But, again, where that verdict exceeds the maximum recovery, then the verdict is not the obligation of the defendant or the fund. It is the maximum provided by the statute. Again, this came up to you on an agreement that let's get this answered, but it doesn't waive anybody's right to a jury trial that they want to proceed to have. Any other questions? I'll stand on my briefs at this point. Thank you very much. Thank you. Any briefs and oral arguments? Thank you.